IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Charlotte N. Sweeney

Civil Action No. 1:22-cv-00711-CNS

J.R.,

      Plaintiff,

v.

COMMISSIONER, Social Security Administration,

      Defendant.

---

**ORDER**

---

This matter is before the Court for judicial review of the final decision by the Social Security Administration Commissioner ("the Commissioner") denying J.R.'s[1] application for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XIV of the Social Security Act. Jurisdiction is proper under 42 U.S.C. § 405(g). For the following reasons, the Court REVERSES the Commissioner's denial of benefits and REMANDS for further analysis.

## I. BACKGROUND

A brief summary of the relevant background facts suffices. J.R. was born on April 25, 1988, and was 26 years old at the alleged onset date of disability of July 31, 2014 (Administrative Record ("A.R.") at 141). J.R. lives with a number of serious physical impairments, particularly

---

[1] Pursuant to D.C.COLO.L.APR 5.2(b), Plaintiff J.R. is identified by his initials only.

Crohn's disease—a chronic inflammatory bowel disease causing J.R. to suffer painful flareups, vomiting, diarrhea, anemia, malnutrition, weight loss, and other gastrointestinal complications (*see, e.g.*, A.R. at 53–56, 64). In early 2017, J.R. underwent a proctocolectomy and now has a permanent ileostomy (*see* A.R. at 53–55). In addition, J.R. suffers from Ehlers-Danlos syndrome— a genetic connective tissue disorder causing J.R. to experience painful hypermobility and frequent, spontaneous dislocation of his joints (*see, e.g.*, A.R. at 57–60, 65–72). Aside from his Crohn's disease and Ehlers-Danlos syndrome, J.R.'s medical records also reveal his long-term history of chronic pain syndrome (*see, e.g.*, A.R. at 1144, 1177, 1411, 3284, 3882, 4337, 4348, 4372), degenerative disc disease of the lumbar spine (*see* A.R. at 2117, 3433), insomnia (*see* A.R. at 536, 3324, 3436), and psychological disorders including anxiety, depression, and PTSD (*see* A.R. at 718, 1144, 1152, 1155, 1385, 1392, 1400, 1420, 1426, 3324–30, 3579, 3589, 3884). Over the years, J.R. has had dozens of hospitalizations, surgeries, and doctor's visits for complications related to these diagnoses (*see id.*, EX B1F–B42F). J.R. has also taken many medications for them (*see id.*, EX B15E, B22E).

On February 8, 2019, J.R. applied for DIB and SSI (*see* A.R. at 141, 383–94). He was initially denied benefits on August 21, 2019 (A.R. at 141–94). J.R. requested reconsideration of his application, which the Social Security Administration denied on September 2, 2020 (A.R. at 203–47). J.R. then requested a hearing before an Administrative Law Judge ("ALJ"); the ALJ held a telephonic hearing regarding J.R.'s claim on April 22, 2021 (A.R. at 43–102), as well as a supplemental telephonic hearing on September 1, 2021 (A.R. at 103–36). On September 24, 2021, the ALJ issued a written order denying J.R.'s application (A.R. at 14–42), finding, at each step of the required five-step analysis, that:

1. At all relevant times, J.R. had not engaged in any substantial gainful activity (A.R. at 20).[2]

2. J.R. suffered from the medically determinable, severe impairments of "ulcerative colitis, Crohn's disease, proctocolectomy with permanent ileostomy, Ehlers-Danlos syndrome (EDS)/hypermobility syndrome, degenerative disc disease of the lumbar spine, anxiety, and depression." J.R. also suffered from the medically determinable impairments of insomnia disorder and a right knee injury, both of which were non-severe (A.R. at 20–21).

3. J.R. did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 ("the Listings") (A.R. at 21–24).

4. J.R. was unable to perform any past relevant work despite his impairments (A.R. at 32).

5. Given his impairments, J.R. had the residual functional capacity to perform a range of light work as defined in 20 CFR 404.1567(b) and 416.967(b) (A.R. at 24–32).

J.R. requested review of the ALJ's decision, which the Social Security Appeals Council denied on February 10, 2022 (A.R. at 1–6). J.R. then timely sought review in this Court (*see* ECF No. 1).

## II.  LEGAL STANDARD AND STANDARD OF REVIEW

A claimant is disabled for purposes of the Social Security Act if his physical and/or mental impairments are so severe as to preclude him from performing both his previous work and any other "substantial gainful work which exists in the national economy." *See* 42 U.S.C. § 423(d)(2). "When a claimant has one or more severe impairments the Social Security [Act] requires the [Commissioner] to consider the combined effects of the impairments in making a disability determination." *Campbell v. Bowen*, 822 F.2d 1518, 1521 (10th Cir. 1987); *see* 42 U.S.C. § 423(d)(2)(C). However, the mere existence of a severe impairment or combination of

---

[2] Among other arguments, J.R. asserts that the ALJ's finding that J.R. had engaged in substantial gainful activity in 2018 is unsupported by substantial evidence (*see* ECF No. 12 at 7–8). The Commissioner does not appear to contest this error but argues instead that it was harmless (*see* ECF No. 13 at 12–13). Because the ALJ did not terminate the five-step sequential evaluation after her finding of J.R.'s substantial gainful activity in 2018, the Court agrees that any error was harmless.

impairments does not require a finding that an individual is disabled within the meaning of the Social Security Act. Rather, to be disabling, the claimant's condition must be so functionally limiting as to preclude any substantial gainful activity for at least twelve consecutive months. *See Wall v. Astrue*, 561 F.3d 1048, 1051 (10th Cir. 2009); *see also* 20 C.F.R. § 416.905(a).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled:

> (1) The ALJ must first ascertain whether the claimant is engaged in "substantial gainful activity." A claimant who is working is not disabled regardless of any medical findings.
>
> (2) The ALJ must then determine whether the claimed impairment is "severe." A "severe impairment" must significantly limit the claimant's physical or mental ability to do basic work activities.
>
> (3) The ALJ must then determine if the impairment meets or equals in severity certain impairments described in the Listings.
>
> (4) If the claimant's impairment does not meet or equal a Listing, the ALJ must determine whether the claimant can perform his past work despite any limitations.
>
> (5) If the claimant does not have the "residual functional capacity" to perform his past work, the ALJ must decide whether the claimant can perform any other gainful and substantial work in the national economy. This determination is made on the basis of the claimant's age, education, work experience, and residual functional capacity.

*See Moore v. Astrue*, No. 11-cv-03318-REB, 2013 WL 1222094, at *2 (D. Colo. Mar. 25, 2013) (citing 20 C.F.R. § 404.1520(b)–(f)); *accord Allen v. Barnhart*, 357 F.3d 1140, 1142 (10th Cir. 2004). The claimant has the initial burden of establishing a disability in the first four steps of this

analysis. *Moore*, 2013 WL 1222094, at *2. The burden then shifts to the Commissioner to show that the claimant is capable of performing work in the national economy. *Id.*

A district court's review of the Commissioner's disability decision is limited to determining whether the ALJ applied the correct legal standard and whether the decision is supported by substantial evidence. *See, e.g.*, *Pisciotta v. Astrue*, 500 F.3d 1074, 1075 (10th Cir. 2007). "Substantial evidence" is evidence that a reasonable mind would accept as adequate to support a conclusion, requiring more than a scintilla but less than a preponderance of the evidence. *Moore*, 2013 WL 1222094, at *2 (citations omitted). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Id.* (quoting *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992)). In determining whether substantial evidence supports the disability decision, a district court will "meticulously examine the record as a whole," but it will "not reweigh the evidence or retry the case," nor will it substitute its discretion for that of the Commissioner. *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007). Separately, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

## III.  ANALYSIS

### A.  J.R.'s Chronic Pain Syndrome

Among other alleged points of error, J.R. argues that the ALJ erred at step two in failing to identify and consider *all* of J.R.'s medically determinable, severe impairments (and their combined

effect) in her disability decision (*see* ECF No. 12 at 20–22). With respect to J.R.'s documented history of chronic pain syndrome ("CPS"), the Court agrees.[3]

At step two of the sequential evaluation, the ALJ must determine which of the claimant's alleged impairments, if any, are "severe." 20 C.F.R. § 404.1521. An impairment is not considered severe if it is merely a "slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered." *Wade v. Colvin*, 26 F.Supp.3d 1073, 1079 (D. Colo. 2014) (citation omitted). Although a claimant bears the burden of proof at step two, his burden in this regard is "de minimis." *Hawkins v. Chater*, 113 F.3d 1162, 1169 (10th Cir. 1997).

Here, J.R.'s medical records are replete with references to his CPS diagnosis and its resulting limitations (*see, e.g.*, A.R. at 1144, 1177, 1411, 3284, 3882, 4337, 4348, 4372). Those same records reveal that J.R.'s care providers prescribed medications and recommended treatments specifically aimed at managing his CPS symptoms (*see, e.g.*, A.R. at 1144, 1179). Yet, the ALJ's disability decision never mentions J.R.'s history of CPS, much less determines whether the condition was "severe." The error of failing to consider J.R.'s CPS alongside his Crohn's disease, Ehlers-Danlos syndrome, and other acknowledged impairments comes into stark relief in light of the combinatory nature of CPS—it is a condition with "both a physical and psychological component," in which

---

[3] J.R. makes a similar argument with respect to the ALJ's alleged failure to consider J.R.'s history of neuropathy (*see* ECF No. 12 at 20–21). However, as the Commissioner correctly observes (*see* ECF No. 13 at 6–7), the care provider's diagnosis of neuropathy appears to have been the result of a one-time nerve conduction test performed in 2019 in connection with J.R.'s lumbar spinal issues, which the ALJ did consider and discuss (*see* A.R. at 20, 22, 31). Accordingly, the Court fails to perceive any error with respect to J.R.'s allegedly overlooked neuropathy diagnosis.

> [p]ain merges into and becomes a part of the mental and psychological responses that produce functional impairments. The components are not neatly separable. Given that the consequences of [a chronic pain syndrome sufferer's] physical and mental impairments are so inextricably linked, the Commissioner must consider whether these impairments *taken together* result in limitations equal in severity to those specified by the listings.

*See Bates v. Apfel*, 69 F.Supp.2d 1143, 1148 (N.D. Iowa Sept. 17, 1999) (emphasis in original) (quoting *Lester v. Chater*, 81 F.3d 821, 829–30 (9th Cir. 1995) (superseded by statute on other grounds)); *see also Holt v. Saul*, 416 F.Supp.3d 1234, 1248 (D. Colo. Sept. 16, 2019) ("One factor to be considered in the pain analysis is 'the possibility that psychological disorders combine with physical problems.'") (quoting *Luna v. Bowen*, 834 F.2d 161, 166 (10th Cir. 1987)).

Put more simply, the ALJ did not address J.R.'s CPS at all. This step-two error in overlooking or ignoring J.R.'s CPS infected all later steps in the sequential evaluation—that is, the ALJ's failure to identify and consider *all* of J.R.'s various impairments subsequently prevented her from considering, as she must, whether the *combined effects* of those impairments meet or equal in severity any Listing (Step 3), or whether the *combined effects* of those impairments have any impact on J.R.'s residual functional capacity (Step 5). *See Campbell*, 822 F.2d at 1521; *see also* 42 U.S.C. § 423(d)(2)(C). Moreover, the Court cannot consider this step-two error harmless, because an error in failing to find an impairment "severe" is harmless only so long as the ALJ later considers *all* impairments, severe and non-severe, in assessing a claimant's residual functional capacity. *See Moore*, 2013 WL 1222094, at *3 (citing *Hill v. Astrue*, 289 F. App'x 289, 292 (10th Cir. Aug. 12, 2008). Here, the ALJ's disability decision contains no indication that she even considered J.R.'s CPS, which renders her ultimate disability decision infirm.

Notwithstanding this error, the Commissioner appears to argue that J.R.'s CPS was not "medically determinable" because it was established by mere diagnosis rather than by "objective medical evidence from an acceptable medical source" (*see* ECF No. 13 at 6 (citing 20 C.F.R. § 404.1521)). True enough, a "diagnosis" alone does not suffice to show that a claimant's impairment is "medically determinable." But in J.R.'s case, at least five different treating physicians—i.e., acceptable medical sources—observed and documented J.R.'s CPS firsthand (*see, e.g.*, A.R. at 1144, 1177, 1179, 1411, 3284, 3882, 4337, 4348, 4372). *See Salazar v. Barnhart*, 468 F.3d 615, 621–22 (10th Cir. 2006) (rejecting Commissioner's argument that claimant's borderline personality disorder was mere "diagnosis" and not medically determinable where references to the disorder "appear[ed] repeatedly and consistently throughout the record" and were the result of examinations by several of claimant's care providers); *see also Bakalarski v. Apfel*, No. 97-1107, 1997 WL 748653, at *2 (10th Cir. Dec. 3, 1997) ("[A] physician's unchallenged diagnosis may not be rejected simply because it has not been proven conclusively by a laboratory test or other technique.").

Separately, the Commissioner argues that the ALJ's detailed discussions of J.R.'s Crohn's disease and Ehlers-Danlos syndrome adequately accounted for all of J.R.'s interrelated conditions, including his CPS (*see* ECF No. 13 at 8–9). Not so. On the record before the Court, the ALJ's discussion of J.R.'s various limitations related to Crohn's disease and Ehlers-Danlos syndrome does not demonstrate that she *specifically* considered the limitations posed by CPS,[4] either

---

[4] This is especially important where, as discussed above, *see Bates*, 69 F.Supp.2d at 1148, and as J.R. suggests (*see* ECF No. 14 at 4), CPS may have its own etiology and set of symptoms distinct from those of J.R.'s other impairments. *See, e.g.*, "G898.4 Chronic pain syndrome," in *ICD-10 Classification of Mental and Behavioural Disorders: Diagnostic Criteria for Research* (2023) (defining CPS as "psychosocial dysfunction due to chronic pain"); Rama Yasaei, et al., *Chronic Pain Syndrome*, Nat'l Libr. of Med., https://www.ncbi.nlm.nih.gov/books/NBK470523/ (last

individually or in combination with J.R.'s other acknowledged impairments. *Langley v. Barnhart*, 373 F.3d 1116, 1123–24 (10th Cir. 2004) (reversing where the ALJ's disability decision did not indicate that he considered the cumulative effect of *all* of claimant's impairments); *Spicer v. Barnhart*, 64 F. App'x 173, 177–78 (10th Cir. 2003) (rejecting Commissioner's argument that claimant's osteoarthritis pain was adequately accounted for in ALJ's discussion of claimant's fibromyalgia, despite no mention of osteoarthritis in the ALJ's decision).

In sum, the ALJ's failure to consider J.R.'s CPS and its resulting limitations, singly and in combination with his other impairments, was error requiring reversal of the disability decision.

### B.  Remaining Assertions of Error

The Court ends its analysis here because the remaining arguments raised in J.R.'s briefing "may be affected by the ALJ's treatment of this case on remand." *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003). On remand,[5] the ALJ is directed to consider the remaining issues raised in J.R.'s briefing and to modify her decision if appropriate.

### IV.  CONCLUSION

Based on the foregoing analysis, the Court ORDERS as follows:

1. The conclusion of the Commissioner (through the ALJ) that J.R. was not disabled is REVERSED; and

2. The case is REMANDED to the ALJ, who is directed to:

---

accessed Aug. 24, 2023) (CPS "can come from repetitive acute insults but can also develop as its own distinct disease state").

[5] In view of the obvious suffering caused by J.R.'s various impairments, the Court does not take the decision to remand this case for further, time-consuming proceedings lightly. Though a close call, the Court finds that the circumstances of this case do not warrant a directed award of benefits at present. The Court nevertheless cautions that the Commissioner "is not entitled to adjudicate a case *ad infinitum* until it correctly applies the proper legal standard and gathers evidence to support its conclusion." *Sisco v. Dep't of Health & Hum. Servs.*, 10 F.3d 739, 746 (10th Cir. 1993).

a. Reevaluate whether J.R.'s chronic pain syndrome, whether alone or in conjunction with his other impairments, constitutes a severe impairment at step two of the sequential evaluation;

b. Recontact any treating, examining, or reviewing sources for further clarification of their findings, seek the testimony of additional medical or vocational experts, order additional consultative or other examinations, or otherwise further develop the record as she deems necessary;

c. Reevaluate her determinations at the remaining steps of the sequential evaluation process in light of her conclusions regarding whether the additional impairment of chronic pain syndrome results in a finding of a severe impairment at step two; and

d. Reassess the disability determination, considering both the Court's directions at (a)–(c) above, as well the remaining issues raised in J.R.'s briefing.

Dated this 31st day of August 2023.

BY THE COURT:

_____
Charlotte N. Sweeney
United States District Judge